## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE MARCUCCI,<br>P. JOHN MARCUCCI, JR.,<br>RICHARD MARCUCCI, and<br>PAULA SCHWARTZ | : Civil Action<br>:<br>: No. 08-5560<br>: |
| Plaintiffs | : |
| vs. | : |
| H & L DEVELOPERS, INC. and RONALD<br>LAESSIG and PATRICIA LAESSIG a/k/a<br>PATRICIA A. FERRY | : |
| Defendants | : |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants H&L Developers, Inc., Ronald Laessig, and Patricia Laessig,[1] by and through

their undersigned counsel, respectfully request that the Court adopt the following Findings of

Fact and Conclusions of Law based on the evidence adduced at trial.

### PROPOSED FINDINGS OF FACT

#### *Introduction*

1.      Catherine Marcucci and her late husband, Dr. P. John Marcucci, and Mr. and Mrs.

Laessig became family friends in or around the late 1980s.

2.      Following Dr. P. John Marcucci's passing, Mrs. Marcucci sent checks to Mr.

Laessig, who was Mrs. Marcucci's investor, for purposes of investment.

3.      Mrs. Marcucci knew that Mr. Laessig was investing her money, but at the time

she sent the checks, did not know how her money was being invested.

---

[1] Defendant Patricia Laessig was improperly pled as Patricia Laessig a/k/a Patricia A. Ferry.

4.      By April 1990, Mrs. Marcucci had sent $1,200,000.00 in checks to Mr. Laessig for purposes of investment.

5.      In April 1990, Mrs. Marcucci found out that the $1,200,000.00 in checks had been invested with/loaned to Defendant H&L Developers, Inc. ("H&L").

6.      Mr. Laessig and Russell Hobbs were the shareholders of H&L.

7.      H&L was a Florida corporation involved in a real estate development project in Florida, which eventually failed.

8.      The entire $1,200,000.00 of Mrs. Marcucci's investment/loan went to H&L for purposes of investment in the real estate development project in Florida.

9.      Mrs. Laessig was not aware that Mrs. Marcucci invested/loaned $1,200,000.00 to H&L.

### *Promissory Note Dated January 6, 1989 (Exhibit 1)*

10.     Following Mrs. Marcucci's investment in H&L, Mr. and Mrs. Laessig issued a Promissory Note dated January 6, 1989, payable to Mrs. Marcucci, in the amount of $772,090.39 (Exhibit 1).

11.     Mrs. Laessig has no knowledge regarding the terms or purpose of Exhibit 1, other than a general understanding that it related to Mr. Laessig's business activities.

12.     The $772,090.39 listed in Exhibit 1 is part of the $1,200,000.00 investment in H&L that Mrs. Marcucci is claiming is owed to her.

13.     The $772,090.39 listed in Exhibit 1 was received by H&L prior to the issuance of Exhibit 1.

14.     The $772,090.39 listed in Exhibit 1 was used by H&L in the real estate development project in Florida.

2

15.    Mrs. Marcucci does not recall the first time she saw Exhibit 1.

16.    Mrs. Marcucci recalls receiving Exhibit 1 in the mail.

17.    Neither Mrs. Marcucci nor anyone else asked Mr. or Mrs. Laessig to issue Exhibit 1.

18.    It was Mr. Laessig's idea to issue Exhibit 1.

19.    The issuance of Exhibit 1 was not a requirement for the $1,200,000.00 loan from Mrs. Marcucci to H&L.

20.    Mrs. Marcucci was not involved in the negotiation of Exhibit 1.

21.    Mrs. Marcucci did not have any input or participation in the creation of the terms of Exhibit 1, including but not limited to the June 30, 1990 due date, the payment terms, the interest rate, or the default terms.

22.    Neither Mr. nor Mrs. Laessig stated to Mrs. Marcucci or anyone else that they owed money to Mrs. Marcucci regarding Exhibit 1.

***Promissory Note Dated January 1, 1991 in the Amount of $600,000.00 (Exhibit 2)***

23.    Following Mrs. Marcucci's investment in H&L, H&L issued a Promissory Note dated January 1, 1991, payable to P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci, in the amount of $600,000.00 (Exhibit 2).

24.    The $600,000.00 listed in Exhibit 2 is part of the $1,200,000.00 investment in H&L that Mrs. Marcucci is claiming is owed to her.

25.    The $600,000.00 listed in Exhibit 2 was received by H&L prior to the issuance of Exhibit 2.

26.    The $600,000.00 listed in Exhibit 2 was used by H&L in the real estate development project in Florida.

27.     Mrs. Marcucci recalls receiving Exhibit 2 in the mail.

28.     Mrs. Marcucci had no knowledge of the terms of Exhibit 2 until after she received Exhibit 2 in the mail.

29.     Mrs. Marcucci did not ask H&L to issue Exhibit 2.

30.     It was Mr. Laessig's idea for H&L to issue Exhibit 2.

31.     The issuance of Exhibit 2 was not a requirement for the $1,200,000.00 loan from Mrs. Marcucci to H&L.

32.     Mrs. Marcucci was not involved in the negotiation of Exhibit 2.

33.     Mrs. Marcucci did not have any input or participation in the creation of the terms of Exhibit 2, including but not limited to the December 31, 1995 due date, the payment terms, the interest rate, or the default terms.

34.     P. John Marcucci, Jr. and Richard Marcucci did not see Exhibit 2 until the year 2009.

35.     Paula Schwartz was unaware of the existence of Exhibit 2 until just prior to this lawsuit being filed in November 2008.

36.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz loaned any money to H&L.

37.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz contend that H&L owes any money to them under Exhibit 2.

38.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz asked H&L to issue Exhibit 2.

39.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz had any input or participation in the creation of the terms of Exhibit 2, including but not limited to the December 31, 1995 due date, the payment terms, the interest rate, or the default terms.

*Promissory Note Dated January 1, 1991 in the Amount of $200,000.00 (Exhibit 3)*

40.     Following Mrs. Marcucci's investment in H&L, H&L issued a Promissory Note dated January 1, 1991, payable to Richard Marcucci, in the amount of $200,000.00 (Exhibit 3).

41.     The $200,000.00 listed in Exhibit 3 is part of the $1,200,000.00 investment in H&L that Mrs. Marcucci is claiming is owed to her.

42.     The $200,000.00 listed in Exhibit 3 was received by H&L prior to the issuance of Exhibit 3.

43.     The $200,000.00 listed in Exhibit 3 was used by H&L in the real estate development project in Florida.

44.     Mrs. Marcucci recalls receiving Exhibit 3 in the mail.

45.     Mrs. Marcucci had no knowledge of the terms of Exhibit 3 until after she received Exhibit 3 in the mail.

46.     Mrs. Marcucci did not ask H&L to issue Exhibit 3.

47.     It was Mr. Laessig's idea for H&L to issue Exhibit 3.

48.     The issuance of Exhibit 3 was not a requirement for the $1,200,000.00 loan from Mrs. Marcucci to H&L.

49.     Mrs. Marcucci was not involved in the negotiation of Exhibit 3.

50.     Mrs. Marcucci did not have any input or participation in the creation of the terms of Exhibit 3, including but not limited to the December 31, 1995 due date, the payment terms, the interest rate, or the default terms.

51.     Richard Marcucci did not see Exhibit 3 until the year 2009.

52.     Richard Marcucci never loaned any money to H&L.

53.     Richard Marcucci does not contend that H&L owes any money to him under Exhibit 3.

54.     Richard Marcucci did not ask H&L to issue Exhibit 3.

55.     Richard Marcucci did not have any input or participation in the creation of the terms of Exhibit 3, including but not limited to the December 31, 1995 due date, the payment terms, the interest rate, or the default terms.

### Promissory Note Dated January 1, 1991 in the Amount of $400,000.00 (Exhibit 4)

56.     Following Mrs. Marcucci's investment in H&L, H&L issued a Promissory Note dated January 1, 1991, payable to Catherine Marcucci, in the amount of $400,000.00 (Exhibit 4).

57.     The $400,000.00 listed in Exhibit 4 is part of the $1,200,000.00 investment in H&L that Mrs. Marcucci is claiming is owed to her.

58.     The $400,000.00 listed in Exhibit 4 was received by H&L prior to the issuance of Exhibit 4.

59.     The $400,000.00 listed in Exhibit 4 was used by H&L in the real estate development project in Florida.

60.     Mrs. Marcucci recalls receiving Exhibit 4 in the mail.

61.     Mrs. Marcucci had no knowledge of the terms of Exhibit 4 until after she received Exhibit 4 in the mail.

62.     Neither Mrs. Marcucci nor anyone else asked H&L to issue Exhibit 4.

63.     It was Mr. Laessig's idea for H&L to issue Exhibit 4.

64.     The issuance of Exhibit 4 was not a requirement for the $1,200,000.00 loan from Mrs. Marcucci to H&L.

65.     Mrs. Marcucci did not have any input or participation in the creation of the terms of Exhibit 4, including but not limited to the December 31, 1995 due date, the payment terms, the interest rate, or the default terms.

### *Guaranty (Suretyship) Agreement (Exhibit 5)*

66.     Following Mrs. Marcucci's investment in H&L, Mr. and Mrs. Laessig issued a Guaranty (Suretyship) Agreement dated June 30, 1990, payable to P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci, in the amount of $1,200,000.00 (Exhibit 5).

67.     Mrs. Laessig has no knowledge regarding the terms or purpose of Exhibit 5, other than a general understanding that it related to Mr. Laessig's business activities.

68.     The $1,200,000.00 listed in Exhibit 5 is part of the $1,200,000.00 investment in H&L that Mrs. Marcucci is claiming.

69.     The $1,200,000.00 listed in Exhibit 5 was received by H&L prior to the issuance of Exhibit 5.

70.     Mrs. Marcucci recalls receiving Exhibit 5 in the mail, but did not really look at Exhibit 5 until sometime in 2009.

71.     Mrs. Marcucci had no knowledge of the terms of Exhibit 5 until after she received Exhibit 5 in the mail.

72.     Neither Mrs. Marcucci nor anyone else asked Mr. or Mrs. Laessig to issue Exhibit 5.

73.     It was Mr. Laessig's idea to issue Exhibit 5.

7

74.     The issuance of Exhibit 5 was not a requirement for the $1,200,000.00 loan from Mrs. Marcucci to H&L.

75.     Mrs. Marcucci was not involved in the negotiation of Exhibit 5.

76.     Mrs. Marcucci did not have any input or participation in the creation of the terms of Exhibit 5, including but not limited to the payment terms, the interest rate, or the default terms.

77.     P. John Marcucci, Jr. and Richard Marcucci did not see Exhibit 5 until the year 2009.

78.     Paula Schwartz was unaware of the existence of Exhibit 5 until just prior to this lawsuit being filed in November 2008.

79.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz loaned any money to H&L or to Mr. and/or Mrs. Laessig.

80.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz contend that Mr. and/or Mrs. Laessig owe any money to them under Exhibit 5.

81.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz asked Mr. or Mrs. Laessig to issue Exhibit 5.

82.     Neither P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz had any input or participation in the creation of the terms of Exhibit 5, including but not limited to the payment terms, the interest rate, or the default terms.

83.     Neither Mr. nor Mrs. Laessig stated to Mrs. Marcucci, P. John Marcucci, Jr., Richard Marcucci, or Paula Schwartz that they owed money to any of them regarding Exhibit 5.

84.     Neither Mrs. Marcucci, P. John Marcucci, Jr., Richard Marcucci, nor Paula Schwartz ever demanded that Mr. and/or Mrs. Laessig make payment under Exhibit 5.

### *Checks Received by Mrs. Marcucci*

85.    Mrs. Marcucci testified that she received checks from H&L.

86.    Mrs. Marcucci never received anything accompanying the checks she received – only the check and the envelope.

87.    Mrs. Marcucci testified that she kept records of every check she received from 1990 to the present.

88.    Although requested in discovery (Exhibit 12), Mrs. Marcucci's records were not provided nor were they introduced into evidence at trial.

89.    Mrs. Marcucci introduced copies of tax returns, which show that she received a total amount of $1,014,498.00 from H&L from 1990 through 2007 (Exhibit 8).[2]

90.    Mrs. Marcucci introduced copies of checks that she received from Mr. Laessig between July 1, 2005 and May 31, 2007 that show that she received a total amount of $146,000.00 from Mr. Laessig (Exhibit 9).

91.    Exhibits 8 and 9 differ regarding the amount of money that Mrs. Marcucci received in the years 2005, 2006, and 2007:

(a)    Exhibit 8 shows that Mrs. Marcucci received $48,000.00 in 2005, but Exhibit 9 shows that Mrs. Marcucci received $40,000.00 in 2005.

(b)    Exhibit 8 shows that Mrs. Marcucci received $48,000.00 in 2006, but Exhibit 9 shows that Mrs. Marcucci received $68,000.00 in 2006.

(c)    Exhibit 8 shows that Mrs. Marcucci received $20,000.00 in 2007, but Exhibit 9 shows that Mrs. Marcucci received $38,000.00 in 2007.

---

[2] Admission of Exhibit 8 is pending Plaintiffs' production of certified copies of Mrs. Marcucci's tax returns and response by Defendants' counsel.

92.    Mrs. Marcucci believed that the money she received was for interest payments regarding the $1,200,000.00 loan from Mrs. Marcucci to H&L.

93.    Nothing in Exhibits 8 or 9 indicate that the money received by Mrs. Marcucci was for interest payments regarding the $1,200,000.00 loan from Mrs. Marcucci to H&L.

94.    None of the checks received by Mrs. Marcucci were for payment of principal or interest under Exhibits 1-5.

95.    Mr. Laessig sent the checks to Mrs. Laessig because he felt a moral obligation and wanted to keep Mrs. Marcucci going because she is a wonderful person and because he loves her.

96.    Mr. Laessig did not send the checks to Mrs. Marcucci because of any legal obligation, but out of pure good will.

97.    Mr. Laessig never issued a 1099 to Mrs. Marcucci regarding any of the checks that he sent to her.

98.    Mr. Laessig never took a tax deduction regarding any of the checks that he sent to Mrs. Marcucci.

99.    Neither P. John Marcucci, Richard Marcucci, nor Paula Schwartz ever received any money from H&L or Mr. or Mrs. Laessig.

100.    Mrs. Laessig has no knowledge of any money received by Mrs. Marcucci.

## PROPOSED CONCLUSIONS OF LAW

### *Promissory Note Dated January 6, 1989 (Exhibit 1)*

No Meeting of the Minds

1.     Exhibit 1 is not a valid contract because in order to have a valid contract, there must be a meeting of the minds "whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." Mountain Properties, Inc. v. Tyler Hill Realty Corp., 767 A.2d 1096, 1101 (Pa. Super. 2001).

2.     A meeting of the minds requires the concurrence of *both* parties to an agreement, or they have failed to operate an enforceable contract. See id.

3.     A meeting of the minds also requires a meeting of the minds on *all* terms in a contract. See Onyx Oils Resins, Inc. v. Moss, 367 Pa. 416, 420, 80 A.2ds 815, 817 (1951).

4.     Since Mrs. Marcucci testified that she was not involved in the negotiation of Exhibit 1, had no input or participation in the creation of the terms of Exhibit 1 (specifically, the June 30, 1990 date, the payment terms, the interest rate, or the default terms), and did not know that Exhibit 1 existed until she received it in the mail, there was no "concurrence of both parties" to Exhibit 1 nor was there a meeting of the minds on all terms of Exhibit 1.

5.     Furthermore, since Mrs. Laessig testified that she had no knowledge of the terms of Exhibit 1, there was no "concurrence of both parties" to Exhibit 1 nor was there a meeting of the minds on all terms of Exhibit 1.

No Consideration

6.     Exhibit 1 is not a valid contract because in order to have a valid contract, there must be consideration, which "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance, or return promise *bargained for and given in*

*exchange for the original promise*." Blackmon v. Iverson, 324 F. Supp. 2d 602, 611 (E.D. Pa. 2003) [*Emphasis* added].

7.     Past consideration "is insufficient to support a subsequent promise." Id., citing, Cardamore v. Univ. of Pittsburgh, 253 Pa. Super. 65, 384 A.2d 1228 (Pa. Super. 1978).

8.     Since Mrs. Marcucci testified that she did not even know how her money was being invested until after it was invested, there was no bargained for exchange.

9.     Since both Mrs. Marcucci and Mr. Laessig testified that Mrs. Marcucci did not ask Mr. and/or Mrs. Laessig to issue Exhibit 1 and since Mr. Laessig testified that the issuance of Exhibit 1 was not a condition of Mrs. Marcucci's investment/loan to H&L, there was no bargained for exchange.

10.    Furthermore, since Mrs. Marcucci appears to have discovered the existence of Exhibit 1 after she received it in the mail and after she sent the checks to Mr. Laessig for investment in H&L, there was no bargained for exchange because past consideration is insufficient.

Statute of Limitations

11.    *Assuming arguendo* that Exhibit 1 is a valid contract, the applicable statute of limitations bars Mrs. Marcucci's claim.

12.    Exhibit 1 is a Promissory Note payable at a definite time because it has a due date of June 30, 1990.

13.    In Pennsylvania, an action to enforce a promissory note payable at a definite time must be commenced within six years *after the due date*." 13 Pa.C.S. § 3118(a) [*Emphasis* added].

14.    Thus, the statute of limitations to bring an action to enforce Exhibit 1 expired on June 30, 1996.

15.    Since Mrs. Marcucci filed this lawsuit on November 26, 2008, the statute of limitations bars her claim.

16.    The statute of limitations cannot be tolled or revived in this case.

17.    The statute of limitations can only be tolled, or its bar removed, by a clear, distinct, and unequivocal acknowledgment of a debt *as an existing obligation*, such as is consistent with a promise to pay. Huntingdon Finance Corp. v. Newtown Artesian Water Company, 442 Pa. Super. 406, 410; 659 A.2d 1052 (Pa. Super. 1995).

18.    Since Mrs. Marcucci testified that she received checks for interest payments from H&L, the statute of limitations cannot be tolled regarding Exhibit 1, which was issued by Mr. and Mrs. Laessig, not H&L.[3]

19.    Since the only checks that Mrs. Marcucci introduced at trial show that beginning July 1, 2005, Mr. Laessig sent checks to Mrs. Marcucci (Exhibit 9), the statute of limitations cannot be tolled or revived regarding Exhibit 1 because the checks do not satisfy the "acknowledgment doctrine."

20.    The acknowledgment doctrine applies only if:

    (a)    there is no uncertainty either in the acknowledgment or in the identification of the debt;

    (b)    the acknowledgment is plainly referable to the very debt upon which the action is based; and

---

[3] Mrs. Marcucci's tax returns, admitted pending Plaintiffs' production of certified copies of Mrs. Marcucci's tax returns and response by Defendants' counsel, show that she received money from H&L, not Mr. and/or Mrs. Laessig.

      (c)      the acknowledgment is consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time.

See <u>Huntingdon Finance Corp.</u>, 442 Pa. Super. at 410.

21.     A simple declaration of an intent to "discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise." <u>Huntingdon Finance Corp.</u>, 442 Pa. Super. at 410.

22.     Furthermore, a partial payment will only toll the statute of limitations if the payment constitutes "a constructive acknowledgment of the debt from which a promise to pay the balance may be inferred." <u>Cole v. Lawrence</u>, 701 A.2d 987, 990 (Pa. Super. 1997), <u>citing</u> <u>Huntingdon Finance Corp.</u>, 442 Pa. Super. at 410. A statement that is "equivocal concerning a promise to pay" or which does not "clearly identify the debt" will not toll the statute of limitations. <u>Id.</u>, <u>citing</u> <u>Gurenlian v. Gurenlian</u>, 407 Pa. Super. 102, 115; 595 A.2d 145 (1991).

23.     Since the checks (Exhibit 9) received by Mrs. Marcucci from Mr. Laessig do not acknowledge an existing debt owed to Mrs. Marcucci regarding Exhibit 1, since Mrs. Marcucci testified that nothing identifying an alleged debt ever accompanied the checks she received, and since there was no testimony that either Mr. or Mrs. Laessig clearly, distinctly, and unequivocally acknowledged owing money to Mrs. Marcucci regarding Exhibit 1, neither Mr. nor Mrs. Laessig have acknowledged a debt owed to Mrs. Marcucci under Exhibit 1.

24.     Mr. Laessig's desire to send money to Mrs. Marcucci because he felt a moral obligation and wanted to keep Mrs. Marcucci going because she is a wonderful person and because he loves her is legally unenforceable.

***Promissory Note Dated January 1, 1991 in the Amount of $600,000.00 (Exhibit 2)***

No Meeting of the Minds

25.     Exhibit 2 is not a valid contract because in order to have a valid contract, there must be a meeting of the minds "whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." Mountain Properties, Inc., 767 A.2d at 1101.

26.     A meeting of the minds requires the concurrence of *both* parties to an agreement, or they have failed to operate an enforceable contract. See id.

27.     A meeting of the minds also requires a meeting of the minds on *all* terms in a contract. See Onyx Oils Resins, Inc., 367 Pa. at 420.

28.     Since the payees listed in Exhibit 2, P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci, testified that they were not involved in the negotiation of Exhibit 2, had no input or participation in the creation of the terms of Exhibit 2 (specifically, the December 31, 1995 due date, the payment terms, the interest rate, or the default terms), and did not know that Exhibit 2 existed until either late 2008 or 2009, there was no "concurrence of both parties" to Exhibit 2 nor was there a meeting of the minds on all terms of Exhibit 2.

29.     Furthermore, although the $600,000.00 listed in Exhibit 2 is part of the $1,200,000.00 investment that Mrs. Marcucci made in H&L, Mrs. Marcucci is not listed as a payee in Exhibit 2 nor did she have any knowledge of the terms of Exhibit 2 until she received it in the mail.

No Consideration

30.     Exhibit 2 is not a valid contract because in order to have a valid contract, there must be consideration, which "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance, or return promise *bargained for and given in exchange for the original promise*." Blackmon, 324 F. Supp. 2d at 611 [*Emphasis* added].

31.     Past consideration "is insufficient to support a subsequent promise." Id., citing, Cardamore, 253 Pa. Super. 65.

32.     Since the payees listed in Exhibit 2, P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci, testified that they did not loan any money to H&L, there was no bargained for exchange.

33.     Since no one asked H&L to issue Exhibit 2 and since Mr. Laessig testified that the issuance of Exhibit 2 was not a condition of Mrs. Marcucci's investment/loan to H&L, there was no bargained for exchange.

34.     Furthermore, since Mrs. Marcucci testified that by April 1990, she had already issued the entire $1,200,000.00 to be invested in H&L and because Exhibit 2 is dated January 1, 1991, there cannot even be a bargained for exchange between Mrs. Marcucci and H&L to issue Exhibit 2 in favor of P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci in exchange for Mrs. Marcucci's $1,200,000.00 investment in H&L because Mrs. Marcucci's investment would be past consideration.

Statute of Limitations

35.     *Assuming arguendo* that Exhibit 2 is a valid contract, the applicable statute of limitations bars P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci's claim.

36.     Exhibit 2 is a Promissory Note payable at a definite time because it has a due date of December 31, 1995.

37.     In Pennsylvania, an action to enforce a promissory note payable at a definite time must be commenced within six years *after the due date*." 13 Pa.C.S. § 3118(a) [*Emphasis added*].

38.     Thus, the statute of limitations to bring an action to enforce Exhibit 2 expired on December 31, 2001.

39.     Since P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci filed this lawsuit on November 26, 2008, the statute of limitations bars their claim.

40.     The statute of limitations cannot be tolled or revived in this case because neither P. John Marcucci, Jr., Paula Schwartz, nor Richard Marcucci received any money from H&L that could arguably toll the statute of limitations.

*Promissory Note Dated January 1, 1991 in the Amount of $200,000.00 (Exhibit 3)*

No Meeting of the Minds

41.     Exhibit 3 is not a valid contract because in order to have a valid contract, there must be a meeting of the minds "whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." Mountain Properties, Inc., 767 A.2d at 1101.

42.     A meeting of the minds requires the concurrence of *both* parties to an agreement, or they have failed to operate an enforceable contract. See id.

43.     A meeting of the minds also requires a meeting of the minds on *all* terms in a contract. See Onyx Oils Resins, Inc., 367 Pa. at 420.

44.     Since the payee listed in Exhibit 3, Richard Marcucci, testified that he was not involved in the negotiation of Exhibit 3, had no input or participation in the creation of the terms of Exhibit 3 (specifically, the December 31, 1995 due date, the payment terms, the interest rate, or the default terms), and did not even see Exhibit 3 until 2009, there was no "concurrence of both parties" to Exhibit 3 nor was there a meeting of the minds on all terms of Exhibit 3.

45.     Furthermore, although the $200,000.00 listed in Exhibit 3 is part of the $1,200,000.00 investment that Mrs. Marcucci made in H&L, Mrs. Marcucci is not listed as a payee in Exhibit 3 nor did she have any knowledge of the terms of Exhibit 3 until she received it in the mail.

No Consideration

46.     Exhibit 3 is not a valid contract because in order to have a valid contract, there must be consideration, which "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance, or return promise *bargained for and given in exchange for the original promise*." Blackmon, 324 F. Supp. 2d at 611 [*Emphasis* added].

47.     Past consideration "is insufficient to support a subsequent promise." Id., citing, Cardamore, 253 Pa. Super. 65.

48.     Since the payee listed in Exhibit 3, Richard Marcucci, testified that he did not loan any money to H&L, there was no bargained for exchange.

49.     Since no one asked H&L to issue Exhibit 3 and since Mr. Laessig testified that the issuance of Exhibit 3 was not a condition of Mrs. Marcucci's investment/loan to H&L, there was no bargained for exchange.

50.      Furthermore, since Mrs. Marcucci testified that by April 1990, she had already issued the entire $1,200,000.00 to be invested in H&L and because Exhibit 3 is dated January 1, 1991, there cannot even be a bargained for exchange between Mrs. Marcucci and H&L to issue Exhibit 3 in favor of Richard Marcucci in exchange for Mrs. Marcucci's $1,200,000.00 investment in H&L because Mrs. Marcucci's investment would be past consideration.

Statute of Limitations

51.      *Assuming arguendo* that Exhibit 3 is a valid contract, the applicable statute of limitations bars Richard Marcucci's claim.

52.      Exhibit 3 is a Promissory Note payable at a definite time because it has a due date of December 31, 1995.

53.      In Pennsylvania, an action to enforce a promissory note payable at a definite time must be commenced within six years *after the due date*." 13 Pa.C.S. § 3118(a) [*Emphasis added*].

54.      Thus, the statute of limitations to bring an action to enforce Exhibit 3 expired on December 31, 2001.

55.      Since Richard Marcucci filed this lawsuit on November 26, 2008, the statute of limitations bars his claim.

56.      The statute of limitations cannot be tolled or revived in this case because Richard Marcucci never received any money from H&L that could arguably toll the statute of limitations.

***Promissory Note Dated January 1, 1991 in the Amount of $400,000.00 (Exhibit 4)***

No Meeting of the Minds

57.     Exhibit 4 is not a valid contract because in order to have a valid contract, there
must be a meeting of the minds "whereby both parties mutually assent to the same thing, as
evidenced by an offer and its acceptance." Mountain Properties, Inc., 767 A.2d at 1101.

58.     A meeting of the minds requires the concurrence of *both* parties to an agreement,
or they have failed to operate an enforceable contract. See id.

59.     A meeting of the minds also requires a meeting of the minds on *all* terms in a
contract. See Onyx Oils Resins, Inc., 367 Pa. at 420.

60.     Since Mrs. Marcucci testified that she was not involved in the negotiation of
Exhibit 4, had no input or participation in the creation of the terms of Exhibit 4 (specifically, the
December 31, 1995 due date, the payment terms, the interest rate, or the default terms), and did
not know that Exhibit 4 existed until she received it in the mail, there was no "concurrence of
both parties" to Exhibit 4 nor was there a meeting of the minds on all terms of Exhibit 4.

No Consideration

61.     Exhibit 4 is not a valid contract because in order to have a valid contract, there
must be consideration, which "confers a benefit upon the promisor or causes a detriment to the
promisee and must be an act, forbearance, or return promise *bargained for and given in
exchange for the original promise*." Blackmon, 324 F. Supp. 2d at 611 [*Emphasis* added].

62.     Past consideration "is insufficient to support a subsequent promise." Id., citing,
Cardamore, 253 Pa. Super. 65.

63.     Since Mrs. Marcucci testified that she did not even know how her money was
being invested until after it was invested, there was no bargained for exchange.

64.     Since both Mrs. Marcucci and Mr. Laessig testified that Mrs. Marcucci did not ask Mr. and/or Mrs. Laessig to issue Exhibit 4 and since Mr. Laessig testified that the issuance of Exhibit 4 was not a condition of Mrs. Marcucci's investment/loan to H&L, there was no bargained for exchange.

65.     Furthermore, since Mrs. Marcucci testified that by April 1990, she had already issued the entire $1,200,000.00 to be invested and because Exhibit 4 is dated January 1, 1991, there is no bargained for exchange between Mrs. Marcucci and H&L to issue Exhibit 4 in exchange for Mrs. Marcucci's $1,200,000.00 investment in H&L because Mrs. Marcucci's investment is past consideration.

Statute of Limitations

66.     *Assuming arguendo* that Exhibit 4 is a valid contract, the applicable statute of limitations bars Mrs. Marcucci's claim.

67.     Exhibit 4 is a Promissory Note payable at a definite time because it has a due date of December 31, 1995.

68.     In Pennsylvania, an action to enforce a promissory note payable at a definite time must be commenced within six years *after the due date*." 13 Pa.C.S. § 3118(a) [*Emphasis* added].

69.     Thus, the statute of limitations to bring an action to enforce Exhibit 1 expired on December 31, 2001.

70.     Since Mrs. Marcucci filed this lawsuit on November 26, 2008, the statute of limitations bars her claim.

71.     The statute of limitations cannot be tolled or revived in this case.

72.    The statute of limitations can only be tolled, or its bar removed, by a clear, distinct, and unequivocal acknowledgment of a debt *as an existing obligation*, such as is consistent with a promise to pay. Huntingdon Finance Corp., 442 Pa. Super. at 410.

73.    A partial payment will only toll the statute of limitations if the payment constitutes "a constructive acknowledgment of the debt from which a promise to pay the balance may be inferred." Cole, 701 A.2d at 990, citing Huntingdon Finance Corp., 442 Pa. Super. at 410. A statement that is "equivocal concerning a promise to pay" or which does not "clearly identify the debt" will not toll the statute of limitations. Id., citing Gurenlian, 407 Pa. Super. at 115.

74.    Since Mrs. Marcucci believes that she received only interest payments from H&L, but that nothing identifying an alleged debt ever accompanied the checks she received and since there was no testimony that H&L clearly, distinctly, and unequivocally acknowledged owing money to Mrs. Marcucci regarding Exhibit 4, H&L has not acknowledged a debt owed to Mrs. Marcucci under Exhibit 4.

### Guaranty (Suretyship) Agreement (Exhibit 5)

#### No Meeting of the Minds

75.    Exhibit 5 is not a valid contract because in order to have a valid contract, there must be a meeting of the minds "whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." Mountain Properties, Inc., 767 A.2d at 1101.

76.    A meeting of the minds requires the concurrence of *both* parties to an agreement, or they have failed to operate an enforceable contract. See id.

77.    A meeting of the minds also requires a meeting of the minds on *all* terms in a contract. See Onyx Oils Resins, Inc., 367 Pa. at 420.

78. Since the payees listed in Exhibit 5, P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci, testified that they were not involved in the negotiation of Exhibit 5, had no input or participation in the creation of the terms of Exhibit 5 (specifically, the payment terms, the interest rate, or the default terms), and did not know that Exhibit 5 existed until either late 2008 or 2009, there was no "concurrence of both parties" to Exhibit 5 nor was there a meeting of the minds on all terms of Exhibit 5.

79. Furthermore, although the $1,200,000.00 listed in Exhibit 5 is was the dollar amount of Mrs. Marcucci's investment in H&L, Mrs. Marcucci is not listed as a party to or as a payee in Exhibit 5 nor did she have any knowledge of the terms of Exhibit 5 until she received it in the mail.

80. Furthermore, since Mrs. Laessig testified that she had no knowledge of the terms of Exhibit 5, there was no "concurrence of both parties" to Exhibit 5 nor was there a meeting of the minds on all terms of Exhibit 5.

No Consideration

81. Exhibit 5 is not a valid contract because in order to have a valid contract, there must be consideration, which "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance, or return promise *bargained for and given in exchange for the original promise*." Blackmon, 324 F. Supp. 2d at 611 [*Emphasis* added].

82. Past consideration "is insufficient to support a subsequent promise." Id., citing, Cardamore, 253 Pa. Super. 65.

83. Since the payees listed in Exhibit 5, P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci, testified that they did not loan any money to Mr. or Mrs. Laessig, there was no bargained for exchange.

84.    Since no one asked Mr. and/or Mrs. Laessig to issue Exhibit 5 and since Mr. Laessig testified that the issuance of Exhibit 5 was not a condition of Mrs. Marcucci's investment/loan to H&L, there was no bargained for exchange.

85.    Furthermore, since Mrs. Marcucci testified that by April 1990, she had already issued the entire $1,200,000.00 to be invested and because Exhibit 5 is dated June 30, 1990, there cannot even be a bargained for exchange between Mrs. Marcucci and Mr. and Mrs. Laessig to issue Exhibit 5 in favor of P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci in exchange for Mrs. Marcucci's $1,200,000.00 investment in H&L because Mrs. Marcucci's investment would be past consideration.

Statute of Limitations

86.    *Assuming arguendo* that Exhibit 5 is a valid contract, the applicable statute of limitations bars P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci's claim.

87.    Exhibit 5 is a Guaranty (Suretyship) Agreement payable on demand.

88.    In Pennsylvania, the statute of limitations for bringing an action to enforce the obligation of a party to pay a negotiable instrument on demand "must be commenced within six years after the demand ." If no demand has been made, however, "an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years." 13 Pa.C.S. § 3118(b).

89.    Since neither P. John Marcucci, Jr., Paula Schwartz, nor Richard Marcucci ever made a demand for payment to Mr. or Mrs. Laessig and since neither P. John Marcucci, Jr., Paula Schwartz, nor Richard Marcucci received any payments (either principal or interest) from Mr. or Mrs. Laessig, their claim regarding Exhibit 5 was barred after ten years, which would have been June 30, 2000.

90.    Since P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci filed this lawsuit on November 26, 2008, the statute of limitations bars their claim.

91.    The statute of limitations cannot be tolled or revived in this case because neither P. John Marcucci, Jr., Paula Schwartz, nor Richard Marcucci received any money from H&L that could arguably toll the statute of limitations.

### *Damages*

92.    Since P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci deny that H&L or Mr. and Mrs. Laessig owe any money to them, they are not entitled to recover monetary damages.

93.    *Assuming arguendo* that Mrs. Marcucci is able to recover monetary damages, at the most, she would have a claim for unjust enrichment, a quasi-contract theory, against *only* H&L because the entire $1,200,000.00 that she invested went to H&L.

94.    Unjust enrichment can only be proven if the following elements are shown: (1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. See Zvonik v. Zvonik, 435 A.2d 1236, 1239 (Pa. Super. 1981).

95.    The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. See id.

96.    Since Mrs. Marcucci did not show that H&L "wrongfully secured or passively received a benefit that it would be unconscionable for it to retain," she cannot recover under the theory of unjust enrichment.

97.    Where unjust enrichment is found, the law implies a quasi-contract, which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in *quantum meruit*. See id.

98.    Thus, assuming that Mrs. Marcucci did prove a claim for unjust enrichment against H&L, she would only be able to recover restitution ($1,200,000.00 less all money received)[4] and no attorney's fees.

99.    However, since Mrs. Marcucci has *never* alleged unjust enrichment, she cannot claim damages for unjust enrichment.

100.    Furthermore, since Mrs. Marcucci invested the entire $1,200,000.00 in H&L by May 1990, the four-year statute of limitations for unjust enrichment has long expired.

101.    Finally, *assuming arguendo* that Mrs. Marcucci did prevail in a claim for breach of contract, Exhibits 1 and 4 (the only contracts to which Mrs. Marcucci is listed as a payee) provide that Mrs. Marcucci would be entitled to "reasonable costs and expenses, including attorney's fees." However, Mrs. Marcucci's claim for $915,289.98 is totally unreasonable based on the amount of time that her counsel has spent on this matter, the quality of counsel's work product, and the reasonable hourly rates of attorneys with the same experience in this area. The attorney's fees sought would amount to an incredibly excessive hourly rate.[5]

---

[4] Using the numbers in Mrs. Marcucci's Exhibits 8 and 9 (and using the higher of the two numbers for the discrepancies in the years 2005, 2006, and 2007), at the most Mrs. Marcucci would be entitled to $155,002.00.

[5] Assuming Mrs. Marcucci's counsel spent 50 hours on this matter, his hourly rate based on the attorney's fees sought would be $18,305.80 per hour.

*Conclusion*

102.    Exhibits 1-5 are not valid contracts, therefore Plaintiffs Catherine Marcucci, P. John Marcucci, Jr., Paula Schwartz, and Richard Marcucci cannot recover any monetary damages from Defendants H&L, Ronald Laessig, or Patricia Laessig.

Respectfully submitted,

Stephanie J. Mensing, Esquire
Attorney ID No.: 89625
1616 Walnut Street – Suite 710
Philadelphia, Pennsylvania 19103
(215) 735-2171; (215) 359-2741 fax
Dated: August 20, 2009                     Attorney for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CATHERINE MARCUCCI,<br>P. JOHN MARCUCCI, JR.,<br>RICHARD MARCUCCI, and<br>PAULA SCHWARTZ | :   Civil Action<br>:<br>:   No. 08-5560<br>: |
| Plaintiffs | : |
| vs. | :<br>:<br>: |
| H & L DEVELOPERS, INC. and RONALD<br>LAESSIG and PATRICIA LAESSIG a/k/a<br>PATRICIA A. FERRY | :<br>:<br>: |
| Defendants | : |

## CERTIFICATE OF SERVICE

I, Stephanie J. Mensing, Esquire, hereby certify that on August 20, 2009, a true and correct copy of Defendants' Proposed Findings of Fact and Conclusions of Law was filed electronically and is available for viewing and downloading from the ECF system of the U. S. District Court for the Eastern District of Pennsylvania, and that I served the same via electronic filing on the following:

Robert E. Cherwony, Esquire
KRAFT & KRAFT, P.C.
1311 Spruce Street
Philadelphia, PA 19107

Attorney for Plaintiffs

Stephanie J. Mensing, Esquire
Attorney for Defendants